..

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIRD GARD LLC, et al., | CASE NO. 1:12-cv-01286-AWI-MJS |
| Plaintiffs, | FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED |
| v. | |
| SC ELITE, LTD., et al. | (ECF No. 18) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

On March 5, 2013, Plaintiffs Bird Gard, LLC, an Oregon limited liability company, ("Bird Gard"), and Bird-X, Inc., an Illinois corporation, ("Bird-X") (jointly "Plaintiffs") filed the instant Motion for Default Judgment against Defendant SC Elite, Ltd., a Chinese corporation ("SC" or "Defendant"). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. No opposition to the Motion was filed. The matter has been deemed submitted for decision pursuant to Federal Rule of Civil Procedure 78 and Local Rule 230(g).

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2012, Plaintiffs filed a Complaint (ECF No. 1) for trade dress, trademark and copyright infringement against Defendants SC and Ningbo Elite Electronic Technology Co., Ltd., a Chinese corporation, ("Ningbo"). The Complaint alleges false designation of origin, trademark infringement under the Lanham Act, trade dress and trademark infringement under California common law, violation of California Business and Professions Code section 17200, et seq., and copyright infringement.

According to the Complaint:

Bird Gard has been in the business of designing, manufacturing and marketing a complete line of electronic devices to repel birds from commercial, farming, and residential areas for more than twenty years. Through successful research, development, and marketing, it has become a world leader in the use of electronic sound devices for humane relocation of pest birds. Defendant SC, rather than developing its own devices, simply copied Bird Gard's in all respects – appearance, circuit boards, sounds emitted, brochures – and sold them under trademarks confusingly similar to those of Bird-X, a seller of Bird Gard products. In doing so, SC has unlawfully copied Bird Gard's copyrighted products and used them to unlawfully and unfairly confuse customers and compete with Bird Gard.

According to Plaintiffs' counsel's proof of service (ECF No. 12), Plaintiffs' Summons and Complaint was served on SC on November 22, 2012, in accordance with Federal Rule of Civil Procedure 4(f) and subparagraph a) of Article 5 of the Hague Convention on the

Service Abroad of Judicial and Extrajudicial Documents.[1]  No appearance has been made by or on behalf of SC.

On February 26, 2013, pursuant to Plaintiff's request (ECF No. 13), the Clerk of the Court entered default as to Defendant SC.  (ECF No 14.)  Apparently unable to accomplish service on Ningbo, Plaintiffs have dismissed the Complaint, without prejudice, as to that Defendant and proceed here only as against SC.  (ECF Nos. 15 & 16.)

On, March 5, 2013 Plaintiffs filed the instant Motion for Default Judgment seeking an order enjoining SC and anyone acting on its behalf from copying, performing, or distributing Bird Gard's sound recording compilations; using their trademarks or confusingly similar trademarks; and, using the Bird Gard trade dress or confusingly similar trade dress. (ECF No. 18 at 6-7.)

Plaintiffs do not seek damages or attorney fees in the action.

As noted, Defendants have not appeared or otherwise participated in the matter. The Motion for Default Judgment was not served on Defendant.  See Fed. R. Civ. P. 55(b)(2) (requiring written notice of an application for default judgment only if the party against whom a default judgment is sought has appeared); see also Local Rule 135(d).

## II.  **LEGAL STANDARD**

Plaintiff moves for entry of default judgment by the Court.  Federal Rule of Civil Procedure 55(b) governs default judgment and, in relevant part, provides:

///

---

[1] According to the documents attached to the Proof of Service, the Summons and Complaint were personally delivered, apparently by one authorized in China to do so, to the physical location shown on SC's website as its principal place of business.  Although the person shown on the website to be the "Legal Representative/CEO" was absent from SC's business location, the papers reportedly were left there with one identified as that person's father.

3

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

### III.  FINDINGS OF FACT

Taking the well-pleaded allegations in the Complaint as true, the Court finds the following:

1. The Court has subject matter jurisdiction over this copyright and trademark action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338 (a), under the doctrine of supplemental jurisdiction set forth in 28 U.S.C. §§ 1338 (b) and 1367, and under 28 U.S.C. § 1332 because the action is between citizens of States and citizens or subjects of a foreign state and the matter in controversy exceeds $75,000.

In addition, according to the Complaint, SC has shipped infringing goods into this judicial district such that a substantial part of the events and omissions giving rise to the claims herein occurred within this judicial district. Therefore, venue properly lies in this district under 28 U.S.C. § 1391(b)(2).

2.     Plaintiff Bird Gard marks the products it manufactures with, and sells them under, the Bird Gard trademark. (Compl. at ¶ 12.) It also makes those same products with Bird-X's trademarks, including BIRD-X, BIRD-X-PELLER, and BROADBAND PRO. (Id.) The trade dress of the products marked with the BIRD-X or BIRD-X-PELLER marks is identical or virtually identical to the products Bird Gard marks with the BIRD GARD trademark. (Id.) Since at least 2003, Bird Gard and its predecessors have continuously used a consistent trade dress for its products, including the speaker and the casing within which it is enclosed, the clear plastic door covering the control panel, and the layout of the controls and text on the control panel. (Id. at ¶ 13 and Exs. A - C.) Plaintiff's have been advertising and selling their products containing the Bird Gard trade dress in interstate commerce since at least as early as 2003. (Id. ¶ 18.) As a result of Bird Gard's use of the Bird Gard trade dress, its substantial sales, its and Bird-X's advertising, and press coverage of products using that trade dress, the Bird Gard trade dress has acquired distinctiveness. Customers recognize it and associate it with Bird Gard products. (Id.) The Bird Gard trade dress is nonfunctional. (Id. at ¶ 19.)

Bird-X is the owner of United States Trademark Registration of the mark BIRD-X-PELLER, U.S. Trademark Registration No. 1,987,462, issued July 16, 1996, for a sound device that repels pest birds by broadcasting a recording of the birds' own stress calls. That trademark is now incontestable, providing conclusive evidence pursuant to 15 U.S.C. § 1115(b) that the BIRD-X-PELLER mark is valid and owned by Bird-X which has exclusive rights to it. (Id. at ¶ 20.)

3.     Defendant SC, a Chinese corporation, has copied Bird Gard's products in virtually every respect, including its trade dress. (Id. at ¶ 25-6 and Exs. E - H.) SC's advertising

5

and sale of near exact copies of Bird Gard's products is likely to cause confusion among customers and cause them to purchase SC's products believing they are Bird Gard's. (Id. at ¶ 27.) Similarly, SC is selling products under trademarks that are confusingly similar to BIRD-X's, BIRD-X-PELLER, and BROADBAND PRO marks and likely to cause confusion among customers and cause them to think they are purchasing Bird-X products. (Id. at ¶ 28-9.)

4.      Defendant SC's actions violate California Business & Professions Code § 17200, et seq's, prohibition of unlawful, unfair, and fraudulent business practices and are believed to be willful. (Id. at ¶ 37-41.)

5.      Defendant SC has infringed Bird Gard's copyright. Many of Bird Gard's products have solid state erasable programmable read-only memory microchip recordings of bird predator and bird distress sounds. Plaintiffs allege that each of Bird Gard's microchips contain a compilation of sound recordings that is an original work of authorship fixed in a tangible medium of expression and protected by copyright pursuant to 17 U.S.C. §§ 102 and 103 and created by Bird Gard employees vesting initial ownership in Bird Gard pursuant to 17 U.S.C. §§ 201 (a) and (b). Bird Gard has not transferred any part or all of the compilation to any others. (Id. at ¶ 22-3). Bird Gard has applied to the U.S. Copyright Office to register its claim to copyright protection of the compilations at issue here. That office has issued registrations of some of them, and the others are pending. (Id. at 24.) SC has copied Bird Gard's compilations and is selling or offering to sell them as part of its infringing products in violation of 17 U.S.C. § 501(a). (Id. at ¶ 44.)

**IV.    ANALYSIS**

As noted, the Summons and Complaint were served on Defendant SC's place of

business on November 22, 2012. Defendant SC is a Chinese corporation, not an infant or incompetent person, nor one in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. The Court has discretion to enter default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

"Factors which may be considered by the Court in exercising its discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

The allegations of the Complaint, taken as true, well and properly plead valid claims of false designation of origin; copyright, trademark, and trade dress infringement; and violation of California Business and Professions Code § 17200, et seq. They reflect a meritorious claim which has in no way been disputed and which on its face entities Plaintiffs to the relief sought.

While the Federal Rules of Civil Procedure favor, and this Court always prefers to see, disputes moving forward and being resolved on the merits, Defendant SC's failure to respond to the Complaint makes merits review impossible. But for the option to proceed with entry of judgement by default, Defendant SC's failure to participate in this action would serve to deny Plaintiffs any legal remedy; without this remedy Plaintiffs would be prejudiced by having to continue to suffer the infringements and unfair competition attributed to Defendant SC.

7

Defendant SC, being in default, has not presented any argument or evidence demonstrating the possibility of a dispute concerning material facts or the possibility of any defense. Similarly, SC's lack of participation means it has not presented any argument or evidence suggesting that the entry of default was due to excusable neglect.

In summary, essentially all but one of the seven factors to be considered weigh on behalf of granting judgment to Plaintiffs and, under the circumstances, they well outweigh the ususal preference for trial on the merits. Having accepted the well-pleaded allegations of the Complaint as true, the Court finds that Plaintiff is entitled to entry of judgment in its favor and will so recommend.

**V.      REMEDY SOUGHT**

Plaintiff requests that the Court issue an injunction to halt Defendant's use of Bird Gard recordings, its trade dress, and BIRD-X-PELLER and BROADBAND PRO trademarks, including confusingly similar marks.

The Copyright Act specifically authorizes the Court to grant injunctive relief to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Lanham Act and California law authorize injunctive relief to prevent future trademark infringement and to enjoin use of trade dress. See 15 U.S.C. § 1116(a) and Cal. Bus. & Prof. Code §§ 14330, 14340, 17200 et seq. Indeed, injunctive relief is the preferred remedy for trademark violations. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). Accordingly, the Court will recommend that Plaintiff be awarded injunctive relief in this case.

VI. **CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, the Court hereby RECOMMENDS:

1. Plaintiff's Motion for Default Judgment be GRANTED;

2. Defendant SC Elite, Ltd., and its officers, agents, and employees and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, be permanently enjoined and restrained from:

   a) copying, performing, or distributing Bird Gard's sound recording compilations;

   b) using the BIRD-X-PELLAR and BROADBAND PRO trademarks or any other trademarks confusingly similar thereto (including but not limited to BIRD PELLER PRO and SUPER BIRD PELLER PRO) in any manner, including through selling or offering to sell products under such trademarks; and

   c) using the Bird GARD Trade Dress or any other trade dress confusingly similar thereto in any manner, including through selling or offering to sell products containing such trade dress.

3. **Plaintiff is hereby ORDERED to personally serve a copy of this Findings and Recommendation on Defendant SC Elite, Ltd., in the same manner as the summons and complaint were served and also by sending a copy registered mail, return receipt requested (or its equivalent) to said defendant at its principal place of business and to its Legal Representative/C.E.O. Junde Xiang.**

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 10, 2013                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE